IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| LORENA M. BURRELL a.k.a. | § | BANKRUPTCY NO. 10-36989-H4-13 |
| PARRIMORE, a.k.a. HOLLAND | § | |
| | § | |
| Debtor. | § | |
| LORENA M. BURRELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 10-03386 |
| | § | |
| AUTO-PAK-USA, INC. d/b/a | § | |
| CAR NATIONS USA, | § | |
| | § | |
| Defendant. | § | |
| AUTO-PAK-USA, INC. d/b/a | § | |
| CAR NATIONS USA, | § | |
| | § | |
| Appellant. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-0450 |
| | § | |
| LORENA M. BURRELL, | § | |
| | § | |
| Appellee. | § | |

## MEMORANDUM OPINION AND ORDER

Appellant, Auto-Pak USA, Inc. d/b/a Car Nations USA ("Auto-Pak"), appeals the Bankruptcy Court's holding that it violated the automatic stay imposed by 11 U.S.C. § 362 and the Bankruptcy Court's award of punitive damages and attorney's fees to Burrell. Pending before the court are Appellant's Opening Brief (Docket Entry No. 7), and Brief for Appellee Lorena M. Burrell (Docket Entry No. 11). For the reasons explained below, the Bankruptcy Court's Amended Judgment will be affirmed.

## I.  Factual and Procedural Background

Auto-Pak is a used car dealer.  In March of 2009 Burrell purchased a 1999 BMW 528i from Auto-Pak, paying $3,000.00 down and financing the remaining $8,863.65 through Auto-Pak via a Motor Vehicle Retail Installment Sales Contract (the "Contract") that provided for monthly payments of $350.00 payable on the 7th day of each month.[1]

In July of 2010 Auto-Pak repossessed the BMW because Burrell had stopped making monthly payments.  On August 17, 2010, Burrell filed a Chapter 13 bankruptcy petition, and via facsimile notified Auto-Pak of the bankruptcy filing.  On August 19, 2010, Burrell's counsel forwarded a demand letter to Auto-Pak seeking turnover of the BMW.  Auto-Pak did not respond to Burrell's demand letter.  On August 24, 2010, Burrell contacted Auto-Pak to resolve the turnover issue, but Auto-Pak refused to release the BMW.[2]

On August 25, 2010, Burrell initiated an adversary proceeding in the Bankruptcy Court seeking turnover of the BMW and damages based on theories of conversion and violation of the automatic stay.[3]  On December 30, 2010, Auto-Pak filed an Answer to Burrell's

---

[1]Motor Vehicle Retail Installment Sales Contract, attached to Joint Pretrial Statement, included in the Bankruptcy Record on Appeal ("BROA"), Docket Entry No. 2-36, pp. 3-11.  See also Docket Entry No. 31 in Adversary Proceeding No. 10-03386.

[2]Admissions of Fact stated in Joint Pretrial Statement, included in BROA, Docket Entry No. 2-34, p. 5.  See also Docket Entry No. 31 in Adversary Proceeding No. 10-03386.

[3]Plaintiff's Complaint for Turnover, Violation of the Automatic Stay and Damages ("Plaintiff's Complaint"), included in
(continued...)

Complaint.[4]   Auto-Pak's Answer admitted the allegations in paragraphs 6 through 14 of Burrell's Complaint.[5]   Paragraphs 6 through 14 of Burrell's Complaint alleged as follows:

> 6.   Plaintiff's debt with Defendant represents a consumer debt as evidenced by the purchase of a 1999 BMW 525 A (VIN . . ., hereinafter referred to as "Vehicle") for Plaintiff's personal and family use.  Plaintiff's Vehicle is property of the estate pursuant to 11 U.S.C. § 1306.

> 7.   Plaintiff's Vehicle was repossessed in late July 2010.  Plaintiff is unsure as to the exact date of repossession.  Prior to filing her case, Plaintiff had been in contact with Defendant regarding payment on the arrears and releasing the Vehicle. Plaintiff filed a chapter 13 case on August 17, 2010.

> 8.   Upon the filing, Plaintiff notified Defendant of the filing of the case.

> 9.   Defendant was notified of the bankruptcy filing on August 17, 2010, via facsimile.

> 10.  Plaintiff contacted Defendant on or about August 18, 2010, to arrange return of the Vehicle. Defendant refused to turnover the Vehicle.

> 11.  Plaintiff forwarded a demand letter on August 19, 2010, regarding turnover of the Vehicle.  Defendant did not respond to the demand letter.

> 12.  Plaintiff contacted Defendant again on August 24, 2010, to resolve the turnover issue.  Defendant refused to release the [vehicle] yet again.

---

[3](...continued)
BROA, Docket Entry No. 2-4.  See also Docket Entry No. 1 in Adversary Proceeding No. 10-03386.

[4]Defendant Auto-Pak-USA Inc. d/b/a Car Nations Original Answer to the Complaint of Lorena Burrell ("Defendant's Original Answer"), included in BROA, Docket Entry No. 2-24.  See also Docket Entry No. 21 in Adversary Proceeding No. 10-03386.

[5]Id. at 1 ¶ 2 (stating "[t]he allegations in paragraphs 6 through 14 of Plaintiff's complaint are admitted").

13.   Defendant has intentionally and knowingly refused
to turnover the Vehicle despite repeated notice[]
of the chapter 13 case and after written and oral
demands.

14.   Defendant is still in possession of the Vehicle.[6]

Under the heading "Affirmative Defenses" Auto-Pak asserted that

6.   Plaintiff was in serious arrears on her car
payments.  The car was repossessed for nonpayment
on July 2, 2010.  Plaintiff was given 5 days to
redeem the car, after which time the car would be
sold at a private sale.  On August 16, 2010, the
car was sold to Americars, another dealer, for
$3,400.00.  Defendant waited a month and thirteen
days before disposing [of] the vehicle.  Plaintiff
filed her petition on August 17, 2010; one day
after the sale had taken place.  Defendant learned
about the bankruptcy and complaint on August 25,
2010.

. . .

9.   Plaintiff alleges a cause of action for violation
of the automatic stay.  11 U.S.C. § 362 grants an
immediate restraining order or automatic stay of
certain creditor activities against the debtor.
Typically those acts that are restrained or stayed
are future acts that could have taken place before
the filing and acts that took place before the
filing and are continuing after the filing.  In
this case, the[re] was no violation of the
automatic stay.  The car that is the basis of the
complaint was repossessed and sold before Plaintiff
filed her bankruptcy.  The whole process had been
completed from beginning to end when the bankruptcy
petition was filed.[7]

_____

    [6]Plaintiff's Complaint, included in BROA, Docket Entry
No. 2-4, p. 2.  See also Docket Entry No. 1 in Adversary Proceeding
No. 10-03386.

    [7]Defendant's Original Answer, included in BROA, Docket Entry
No. 2-24, p. 2 ¶ 6 and p. 3 § 9.  See also Docket Entry No. 21 in
Adversary Proceeding No. 10-03386.

On March 8, 2011, the Bankruptcy Court conducted a trial on the liability portion of Burrell's complaint.[8]  The Joint Pretrial Statement identified the following Contested Issues of Fact:

### Plaintiff:

1.  Whether Plaintiff was the owner of the Vehicle upon her filing of bankruptcy on August 17, 2010.

2.  Whether the Vehicle had been sold by the Defendant prior to August 17, 2010.

3.  Whether the alleged sale by the Defendant on August 16, 2010, occurred.

4.  Whether Plaintiff is entitled to prejudgment interest.

5.  Whether Plaintiff is entitled to incurred out-of-pocket expense.

. . .

### Defendant:

1.  Defendant adopts Plaintiff's contested issues of law as its own.[9]

On June 8, 2011, the Bankruptcy Court issued an Order concluding that Auto-Pak had violated the automatic stay, and setting a hearing on damages for July 8, 2011.[10]  The Bankruptcy Court explained its conclusion that Auto-Pak had violated the automatic stay as follows:

---

[8]See Trial Transcript, included in BROA, Docket Entry No. 2-61, 62, and 63.

[9]Contested Issues of Fact stated in Joint Pretrial Statement, included in BROA, Docket Entry No. 2-34, p. 6.  See also Docket Entry No. 31 in Adversary Proceeding No. 10-03386.

[10]Order, included in BROA, Docket Entry No. 2-55.  See also Docket Entry No. 48 in Adversary Proceeding No. 10-03386.

. . . Auto-Pak argues that, in a dealer-to-dealer sale, the bill of sale, alone, is sufficient to transfer ownership to the purchasing dealer.  Auto-Pak fails to appreciate, however, that since Burrell's ownership rights in the vehicle were never terminated by foreclosure, Auto-Pak could not transfer complete ownership to Americars because Auto-Pak did not own the car.  *See* Tex. Transp. Code §§ 501.071, 501.073, 501.074.

Auto-Pak argues that a bill of sale is sufficient under Texas law to transfer title to a vehicle if the sale is between two dealers.  Auto-Pak alleges that dealer-to-dealer sales do not require the same type of title transfers as other sales in Texas.  The Court need not address that issue.  Until Auto-Pak obtained good title from Burrell, it was not a dealer-owner of the [BMW]; its was merely a lien holder.  A lien holder — until it forecloses on the vehicle — may not transfer title in a dealer-to-dealer sale.

Burrell retained title after the repossession.  Auto-Pak was required to foreclose on Burrell's ownership interest in order to transfer ownership to Americars.  The bill of sale transaction, alone, was insufficient to accomplish such foreclosure.  Accordingly, Auto-Pak violated 11 U.S.C. § 362 by failing to return the vehicle after the filing of Burrell's bankruptcy petition.  *See Mitchell v. BankIllinois*, 315 B.R. 891 (S.D. Tex. 2004).

The Court finds that, even assuming Auto-Pak's portrayal of the facts at trial is correct, Auto-Pak violated the automatic stay.  Therefore, the Court need not consider the legal implications of the discrepancies between [] Auto-Pak's Admissions in the Answer and the presentation of the facts at trial.[11]

On December 16, 2011, the Bankruptcy Court signed a Memorandum Opinion as to actual and punitive damages for Auto-Pak's willful violation of the automatic stay.  In the Memorandum Opinion [t]he Court:

- finds Burrell's actual damages other than legal fees to be $7,181.60.  The Court awards Burrell this amount.

---

[11]*Id.* at 3-4.

- finds Burrell's reasonable legal fees to be $54,516.95. The Court awards Burrell this amount.

- awards Burrell an additional $7,181.60 in punitive damages.[12]

The Bankruptcy Court explained its decision to award Burrell punitive damages as follows:

> The Court does not believe any sale took place on August 16, 2010. The Court formed this belief after reviewing all of the pleadings and listening to the witnesses' testimony at trial. The Court believes that once Auto-Pak realized Burrell retained rights in the vehicle even after the repossession, it chose to back-date the bill of sale instead of returning the vehicle, in the erroneous belief that this would extinguish Burrell's interest. This decision makes Auto-Pak's automatic stay violation much more egregious. Under these exacerbating circumstances, the large punitive damages award is both reasonable and justified in order to deter Auto-Pak and other creditors from acting similarly in the future.[13]

The Bankruptcy Court entered a Judgment awarding Burrell actual and punitive damages and attorney's fees in an amount totaling $68,880.55, together with costs and post-judgment interest at 0.11% per annum.[14]

On February 1, 2012, the Bankruptcy Court denied Auto-Pak's motion for new trial[15] and issued an Amended Judgment awarding

---

[12]Memorandum Opinion, included in BROA, Docket Entry No. 2-79, p. 1. See also Docket Entry No. 72 in Adversary Proceeding No. 10-03386.

[13]Id. at 7.

[14]Judgment, included in BROA, Docket Entry No. 2-78. See also Docket Entry No. 70 in Adversary Proceeding No. 10-03386.

[15]Order Denying Motion for New Trial, included in BROA, Docket Entry No. 2-87. See also Docket Entry No. 77 in Adversary Proceeding No. 10-03386.

Burrell a judgment for $72,060.15, together with costs and post-judgment interest at 0.12% per annum.[16]

## II.  Standard of Review

A district court has jurisdiction to hear an appeal from a bankruptcy court's final judgment or order.  28 U.S.C. § 158(a). The Bankruptcy Court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013.  A finding of fact is clearly erroneous if, after review of all the evidence, the court is left with a firm and definite conviction that the bankruptcy court erred.  In re McDaniel, 70 F.3d 841, 843 (5th Cir. 1995).  The Bankruptcy Court's conclusions of law and conclusions on mixed questions of law and fact and application of law to the facts are reviewed de novo. In re Bass, 171 F.3d 1016, 1021 (5th Cir. 1999).  Matters within a bankruptcy judge's discretion such as the Bankruptcy Court's decision to award attorney's fees are reviewed for an abuse of discretion.  In re Pratt, 524 F.3d 580, 584 (5th Cir. 2008) (citing In re Cahill, 428 F.3d 536, 539 (5th Cir. 2005)).  A bankruptcy court abuses its discretion when it "(1) applies an improper legal standard or follows improper procedures . . ., or (2) rests its

---

[16]Amended Judgment, included in BROA, Docket Entry No. 2-86. See also Docket Entry No. 78 in Adversary Proceeding No. 10-03386.

decision on findings of fact that are clearly erroneous." In re Cahill, 428 F.3d at 539.   This court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."   Fed. R. Bankr. P. 8013.   The court may "affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." In re Cueva, 371 F.3d 232, 236 (5th Cir. 2004) (quoting In re Besing, 981 F.2d 1488, 1494 (5th Cir. 1993), cert. denied, 114 S.Ct. 79 (1993)).

### III.  **Analysis**

Auto-Pak appeals the Bankruptcy Court's award of punitive damages and attorney's fees to Burrell and its holding that Auto-Pak violated the automatic stay.

### A.    **The Bankruptcy Court Did Not Erroneously Hold that Auto-Pak Violated the Automatic Stay**

Auto-Pak argues that the BMW was not property of Burrell's bankruptcy estate, and that the Bankruptcy Court erred in holding that Auto-Pak violated the automatic stay.   In support of this argument Auto-Pak asserts that it lawfully repossessed and sold the BMW to Americars before Burrell filed her Chapter 13 petition, and that the following conclusions of the Bankruptcy Court are clearly erroneous:

   1)   Auto-Pak, after it repossessed Burrell's car, was acting in the capacity of a lien holder — not a dealer;

-9-

2)   A Bill of Sale was by itself [] insufficient to
     transfer title between Auto-Pak and Americars; even
     assuming a bill of sale would be sufficient to
     transfer title in a normal dealer-to-dealer sale;

3)   Even if some sort of purported sale occurred on
     August 16, 2010, [Burrell still had legal and
     beneficial title to the vehicle upon filing for
     bankruptcy on August 17, 2010].[17]

Without disputing that the BMW was repossessed before she filed her

bankruptcy petition, Burrell responds that under Texas law she

retained ownership of the BMW after it was repossessed, and that

the Bankruptcy Court correctly found that Auto-Pak did not sell the

BMW to Americars before she filed her Chapter 13 petition.

### 1.   Applicable Law

When a bankruptcy petition is filed the automatic stay

operates as a self-executing injunction. The stay prevents

creditors from taking any collection actions against the debtor or

the property of the debtor's estate for pre-petition debts. 11

U.S.C. § 362(a).  When the automatic stay is violated, the

Bankruptcy Code creates a private right of action in favor of the

debtor:  "[A]n individual injured by any willful violation of a

stay provided by this section shall recover actual damages,

including costs and attorney's fees, and, in appropriate

circumstances, may recover punitive damages."  11 U.S.C.

§ 362(k)(1).  The Fifth Circuit has held that a "willful" violation

of the automatic stay means acting with knowledge of the stay:

---

[17]Appellant's Opening Brief, Docket Entry No. 7, p. 2.  See
also id. at ii.

> A willful violation does not require a specific intent to
> violate the automatic stay.  Rather, the statute provides
> for damages upon a finding that the defendant knew of the
> automatic stay and that the defendant's actions which
> violated the stay were intentional.  Whether the party
> believes in good faith that it had a right to the
> property is not relevant to whether the act was "willful"
> or whether compensation must be awarded.

In re Chesnut, 422 F.3d 298, 302 (5th Cir. 2005).  To establish
that Auto-Pak violated the automatic stay Burrell had to prove by
a preponderance of the evidence that:  (1) Auto-Pak knew of the
existence of the stay; (2) Auto-Pak's actions were intentional; and
(3) Auto-Pak's actions violated the stay.  Id.  See also In re
Repine, 536 F.3d 512, 519 (5th Cir. 2008), cert. denied, 129 S.Ct.
1008 (2009).  It is undisputed that Auto-Pak received notice of
the existence of the stay the day that Burrell's Chapter 13
petition was filed, i.e., August 17, 2010, and that Auto-Pak's
failure to turnover the BMW was intentional.  At issue is whether
Auto-Pak's actions violated the stay.  Auto-Pak argues that its
actions did not violate the stay because the BMW was not property
of Burrell's bankruptcy estate.  Auto-Pak explains that the BMW was
not property of Burrell's bankruptcy estate because Auto-Pak
repossessed and disposed of the BMW by selling it to Americars
before Burrell filed her Chapter 13 petition.

For purposes of bankruptcy proceedings, property of the estate
includes "all legal or equitable interests of the debtor in
property as of the commencement of the case."  See 11 U.S.C.
§ 541(a)(1).  Section 542(a) governing turnover of property of the

-11-

estate requires entities in possession of property "that the trustee may use, sell, or lease under section 363" to turnover that property. This may include property that has been seized pre-petition by one of the debtor's creditors. See United States v. Whiting Pools, Inc., 103 S.Ct. 2309, 2314-15 (1983) ("§ 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of the reorganization proceedings").[18] See also Mitchell v. BankIllinois, 316 B.R. 891, 896 (S.D. Tex. 2004) (recognizing that "if a secured creditor repossesses the debtor's property prepetition, that property may be included in the estate"). Issues regarding what property interests a debtor holds when a bankruptcy petition is filed are resolved by reference to state law. Butner v. United States, 99 S.Ct. 914, 918 (1979) ("Property interests are created and defined by state law."). Once the debtor's state law property rights are determined, federal bankruptcy law applies to establish the extent to which those rights are property of the estate. Mitchell, 316 B.R. at 896 (citing Butner, 99 S.Ct. at 918).

---

[18]Although Whiting Pools involved a Chapter 11 proceeding, and the Supreme Court reserved the question of whether § 542(a) has the same effect in Chapter 13 proceedings, 103 S.Ct. at 2315 n. 17, many courts have applied Whiting Pools to Chapter 13 cases. See e.g., Mitchell v. BankIllinois, 316 B.R. 891, 896 (S.D.Tex. 2004).

2.    The Bankruptcy Court's Conclusions Are Not Clearly
Erroneous

Auto-Pak argues that "uncontroverted evidence established that
Burrell no longer had 'legal and beneficial title to the vehicle
upon filing for bankruptcy on August 17, 2010.'"[19]    Auto-Pak
explains that "[i]n the instant case, Auto-Pak sold the vehicle to
a third party dealer and provided a bill of sale on the same day of
the transaction, but delivered the title at a later date."[20]  Citing
In re Moore, 448 B.R. 93 (Bankr. N.D. Ga. 2011), In re Jones, 304
B.R. 462 (Bankr. N.D. Ala. 2003), and In re Menasche, 301 B.R. 757
(Bankr. S.D. Fla. 2003), Auto-Pak argues that

> having failed to take any course of action to redeem the
> collateral, the vehicle made the basis of Burrell's
> claim, especially after abandonment, was no longer
> property of the estate at the time of the
> repossession. . .
>
> Auto-Pak, by and through its owner and president,
> Ali Gardezi, complied in every detail with the
> repossession practices of automobiles after a default of
> the retail installment contract.   Upon receiving the
> vehicle, he sent notice to Burrell's last known address,
> executed the repossession affidavit, sent notice of
> intent to sell the vehicle and the balance due on the
> vehicle in the event Burrell intended to redeem the
> vehicle; and thereafter, having received no response,
> entered into an agreement with and sold to Americars the
> BMW as evidenced by the Bill of Sale and notation on the
> vehicle title of the sale of the BMW on August 16,
> 2010.[21]

---

[19]Appellant's Opening Brief, Docket Entry No. 7, p. 2.

[20]Id. at 11.

[21]Id. at 11-12.

Citing <u>Rangle v. Bock Motor Co.</u>, 437 S.W.2d 329 (Tex. App. — Austin 1969, writ refused n.r.e.), Auto-Pak asserts that

> [a]ll that need be acquired for ownership to transfer allowing liquidation of collateral when there has been a breach of a retail installment agreement is the repossession without a breach of the peace and execution of the repossession affidavit.
>
> . . .
>
> In this instant case, the bankruptcy court failed to weigh all of the relevant evidence that was before it. The Court failed to apply the appropriate law of the State of Texas and, instead, worked under some unsupported belief that Tex. Transportation Code §§ 501.071, 501.073, and 501.074, dictated its conclusion that Auto-Pak could not transfer complete ownership to Americars because Auto-Pak did not own the car. [Dkt #48, at pp. 3-4] Consequently, the bankruptcy court's findings and conclusions were clearly erroneous thereby rendered the judgment in favor of Burrell and against Auto-Pak a clear abuse of discretion.[22]

> (a) The Bankruptcy Court did not err in concluding that Auto-Pak, after it repossessed Burrell's car, was acting in the capacity of a lien holder — not a dealer.

Secured transactions for consumer goods such as the BMW at issue here are governed by the Texas version of the Uniform Commercial Code (U.C.C.), the Texas Business & Commerce Code. A "consumer-goods transaction" is a transaction in which an individual incurs an obligation primarily for personal, family, or household purposes, and a security interest in the goods secures the individual's obligation to pay for the goods. <u>See</u> Tex. Bus. &

---

[22]<u>Id.</u> at 12-13.

Com. Code § 9.102(23) (defining "[c]onsumer goods"), and § 9.102(24) (defining "[c]onsumer goods transaction"). <u>See also</u> <u>Vibbert v. PAR, Inc.</u>, 224 S.W.3d 317, 322 (Tex. App. — El Paso 2006, no pet.) (citing Tex. Bus. & Comm. Code § 2.105(a) and acknowledging that "[m]otor vehicles are included in the UCC's definition of 'goods'").

Section 9.609 of the Texas Business & Commerce Code allows a party holding a purchase money security interest in consumer goods to take possession of the collateral after default without judicial process if it acts without a breach of the peace. Auto-Pak repossessed the BMW without breaching the peace in July of 2010. However, despite Auto-Pak's argument to the contrary,[23] neither Burrell's default nor Auto-Pak's exercise of its right to repossession, its execution of a repossession affidavit, and/or its notice to Burrell extinguished Burrell's interest in the BMW.

In order to extinguish Burrell's interests in the BMW following repossession Auto-Pak either had to dispose of the BMW in accordance with § 9.610 of the Texas Business & Commerce Code, or Auto-Pak had to accept the BMW in full satisfaction of Burrell's obligation in accordance with § 9.620 of the Texas Business & Commerce Code. Unless and until Auto-Pak completed the steps

---

[23]<u>Id.</u> at 11 ("[H]aving failed to take any course of action to redeem the collateral, the vehicle made the basis of Burrell's claim, especially after abandonment, was no longer property of the estate at the time of the repossession.").

needed either to dispose of the BMW or to accept the BMW in full satisfaction of Burrell's obligation, Burrell retained rights to the BMW after the repossession.  See Mitchell, 316 B.R. at 898 (recognizing that under Texas law a debtor's rights in repossessed collateral include the right to notification before the disposition of the collateral, Tex. Bus. & Com. Code § 9.611, the right to any surplus from the disposition of the collateral, Tex. Bus. & Com. Code § 9.615(d)(1), and the right to redeem the collateral, Tex. Bus. & Com. Code § 9.623).  In Whiting Pools, 103 S.Ct. at 2315, the Supreme Court held that a debtor's interest in property that was repossessed prepetition was property of the debtor's bankruptcy estate.  Since then bankruptcy courts in Texas have consistently held that debtors are entitled to turnover of vehicles repossessed before the filing of the Chapter 13 petition unless the creditor has completed procedures specified in the Texas Business & Commerce Code to dispose of, or retain, the vehicle before the bankruptcy petition is filed.  See In re Richardson, 135 B.R. 256, 257 (Bankr. E.D. Tex. 1992) ("It is beyond dispute that Debtor's automobile, while lawfully repossessed prior to the filing of Debtor's bankruptcy petition, continues to be property of the estate."); In re Mitchell, 316 B.R. at 898 ("Following Whiting Pools and the majority of courts that have considered this question, this court finds that Mitchell's vehicle was property of the bankruptcy estate, despite the fact that BankIllinois seized it prepetition.").

-16-

Auto-Pak's reliance on In re Moore, 448 B.R. at 93, In re Jones, 304 B.R. at 462, In re Menasche, 301 B.R. at 757, and Rangle, 437 S.W.2d at 329, in support of its contention that following its repossession of the BMW, execution of a repossession affidavit, and notice to Burrell, Burrell no longer had "legal and beneficial title to the vehicle," is misplaced.  Three of these cases involved inapposite facts and laws of states other than Texas pursuant to which title to the repossessed vehicle passed from the debtor to the creditor by operation of law.  The only case based on Texas law supports the Bankruptcy Court's conclusion that when Auto-Pak disposed of the BMW, Auto-Pak was acting as a lien holder, not a dealer.

In re Moore involved the pawnshop laws of Georgia.  The court described the law at issue as follows:

> If the borrower does not timely redeem a motor vehicle, the statute provides for the automatic forfeiture of the borrower's ownership interest. Specifically, O.C.G.A. § 44-14-403(b) provides (emphasis added):
>
>> Pledged goods not redeemed within the grace period *shall be automatically forfeited to the pawnbroker* by operation of this Code section, and any ownership interest of the pledgor or seller [i.e., the borrower] *shall automatically be extinguished as regards the pledged item.*

In re Moore, 448 B.R. at 97.  Based on this statute the court concluded that when the debtors filed joint Chapter 7 cases they had continuing rights in motor vehicles that they had pawned prepetition where the redemption periods had not run and the

-17-

debtors retained possession of vehicles, having provided pawnbroker merely with certificates of title, but that the debtors' failure to take any affirmative action to exercise their right of redemption resulted in automatic forfeiture of their interest in the vehicles postpetition, and that when, following expiration of the redemptive period the pawnbroker repossessed the vehicles, the vehicles were no longer property of the estate. Id. at 97-102.

In re Jones, 304 B.R. at 462, involved the Alabama Pawnshop Act, a statute that — like the Georgia statute referenced above — provided that "[p]ledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker." Ala. Code § 5-19A-6. This statute, unlike any provision of the Texas Business & Commerce Code cited by Auto-Pak, unambiguously divested the debtors of all their property rights when the redemption period expired.

In re Menasche, 301 B.R. at 757, was a case where the debtors defaulted on an automobile loan and the secured creditor repossessed the vehicle hours before the debtors filed a Chapter 13 petition. Although when they filed their Chapter 13 petition the debtors possessed a right to redeem the vehicle, and the debtors proposed to exercise their right of redemption by paying the balance on the loan with interest through their Chapter 13 plan, relying on Florida's version of the U.C.C., the court concluded that the debtor's proposal to redeem the vehicle through their

-18-

Chapter 13 plan did not satisfy the requirements of Florida law. In reaching this conclusion the court relied on the Eleventh Circuit's opinion in <u>Bell-Tel Federal Credit Union v. Kalter (In re Kalter)</u>, 292 F.3d 1350 (11th Cir. 2002), "holding that under Florida law, repossessed vehicles are not property of the bankruptcy estate." <u>In re Menasche</u>, 301 B.R. at 759. The court explained that because the Eleventh Circuit found in <u>Kalter</u>

> that Florida's UCC did not determine ownership interests in a repossessed vehicle, the Eleventh Circuit turned to Florida's Title Certificate Statute. The Court found that "[a]lthough marketable title is only *evidence* of ownership, § 319.28 recognizes that" repossession is an event of transfer of ownership. <u>Kalter</u>, 292 F.3d at 1359 (emphasis in original). Florida Statutes § 319.28(2)(b) provides that "[i]n case of repossession of a motor vehicle . . . pursuant to the terms of a security agreement . . ., an affidavit by the party to whom possession has passed stating that the vehicle . . . was repossessed upon default in the terms of the security agreement . . . shall be considered satisfactory proof of ownership." <u>Id.</u> (quoting Fla. Stat. § 319(2)(b)). Finding no other substantive law that establishes when ownership transfers, the Eleventh Circuit concluded that under Florida law, "ownership passes when the creditor repossesses the vehicle." <u>Id.</u> at 1360.

<u>Menasche</u>, 301 B.R. at 760.

The only case that Auto-Pak cites based on Texas law is <u>Rangle</u>, 437 S.W.2d at 329. That case involved the purchase of an automobile by Rangle from Bock Motor pursuant to a retail installment contract that Bock Motor assigned to Ford Motor Credit Company. When Rangle stopped making payments due under the contract, Bock Motor repurchased the contract from Ford Motor Credit Company. Bock Motor's attorney sent a Notice of Sale

advising Rangle that the automobile would be sold to the highest
bidder at a public sale conducted on the courthouse steps, and that
if the automobile sold for less than the unpaid balance due and
owing on the contract, Rangle would be asked to pay the deficiency,
plus costs, expenses, and attorney's fees.  Bock Motor purchased
the automobile at the sale for its wholesale market value, which
was less than the amount due and owing on the contract.  When Bock
Motor sued Rangle for the deficiency, Rangle cross-claimed for
conversion.  Rangle argued that

> Ford Motor Credit Company converted the automobile by
> signing an Affidavit for Repossessed Automobile by making
> a Title Assignment on the back of the Original
> Certificate of Title and by being listed as owner on a
> Texas Passenger Car Receipt.  [Rangle] argue[d] that he
> received no notice of these actions and that the filling
> out of these forms as "owner" by Ford Motor Credit
> Company constituted such an exercise of dominion, control
> and possession of the car as to constitute a conversion.

Id. at 332.  The trial court denied Rangle's claim for conversion,
and the appeals court affirmed explaining that

> [i]n executing the affidavit, title assignment and car
> receipt, Ford Motor Credit Company was following the
> procedure necessary to show the Motor Vehicle
> Registration Division of the Texas Highway Department of
> the repurchase of the contract.  It did not have to
> foreclose the lien itself in view of the dealer's
> agreement to repurchase. . .
>
> Under the definition of 'owner' in Article 1436—1,
> Vernon's Ann.P.C., Ford Motor Credit Company could
> transfer the lien without extinguishing it by making the
> title assignment.  Appellant having defaulted, Ford Motor
> Credit Company, as a lienholder, was an 'owner' for these
> procedural purposes of title assignment under the
> definition of that term in . . . [the](Texas Certificate
> of Title Act) . . .

-20-

. . .

> Since Ford Motor Credit Company was the lienholder of record on the Certificate of Title, it could effectually advise the Highway Department by affidavit of the repossession.   Neither was the designating of Ford Motor Credit Company as the owner on the Texas Passenger Car Receipt, such dominion, possession and control as to constitute a conversion. . . a lienholder may be an 'owner' for purposes of vehicle registration.

Id. at 332-33.  In other words, upon Rangle's default, Ford Motor Credit Company, as the secured party or lienholder, could act as the vehicle's "owner" for purposes of the procedural formalities incident to the transfer of title upon sale of the repossessed vehicle following Rangle's default.   The court concluded, therefore, that Ford Motor Credit Company's actions did not constitute conversion.

Auto-Pak's reliance on Rangle is misplaced for at least two reasons.  First, in Rangle title to the vehicle did not pass upon repossession.  Second, the Rangle court never said that following repossession the lienholder "owned" the vehicle, but only that following repossession the lienholder could act as "'owner' for the[] procedural purposes of title assignment under the definition of that term . . . [in the] (Texas Certificate of Title Act)."  Id. The court explained that the Texas Certificate of Title Act expressly precluded the lienholder from owning the vehicle by defining "owner" to "include[] any person, firm, association, or corporation **other than** a manufacturer, importer, distributor, **or dealer claiming title to, or having a right to operate pursuant to**

-21-

**a lien on a motor vehicle after the first sale as herein defined
. . ."** Id. at 333 (emphasis added).

The court, therefore, concludes that the Bankruptcy Court did
not err by concluding that Auto-Pak, after it repossessed Burrell's
car, was acting in the capacity of a lienholder — not a dealer, and
that as such, Auto-Pak could only extinguish Burrell's interests in
the BMW by foreclosing its lien under the Texas Business & Commerce
Code.

> (b)   The Bankruptcy Court did not err in concluding that
>       the Bill of Sale by itself was insufficient to
>       transfer title between Auto-Pak and Americars.

Asserting that uncontroverted evidence establishes that Auto-
Pak "sold the vehicle to a third party dealer and provided a bill
of sale on the same day of the transaction, but delivered the title
at a later date,"[24]  Auto-Pak argues that the Bankruptcy Court erred
in concluding that it violated the automatic stay because the bill
of sale by itself was sufficient to complete the sale to Americars
and, thereby, extinguish Burrell's interests in the BMW.[25]   In
support of this argument Auto-Pak cites Texas Business and Commerce
Code Annotated § 2.401(b), and Vibbert v. PAR, Inc., 224 S.W.3d 317
(Tex. App. — El Paso 2006, no pet.).[26]   Section 2.401(b) of the
Texas Business and Commerce Code provides:

---

[24]Id. at 11.

[25]Id. at 10, and 13-18.

[26]Id. at 10-16.

> Unless otherwise explicitly agreed title passes to the
> buyer at the time and place at which the seller completes
> his performance with reference to the physical delivery
> of the goods, despite any reservation of a security
> interest and even though a document of title is to be
> delivered at a different time or place. . .

Auto-Pak cites Vibbert, 224 S.W.3d at 322, for the court's acknowledgment that Chapters 1 through 9 of the Texas Business and Commerce Code controls over any conflicting provision of the Texas Certificate of Title Act, i.e., Chapter 501 of the Texas Transportation Code.

Auto-Pak argues that the August 16, 2010, bill-of-sale was sufficient to establish that it disposed of the BMW and thereby extinguished Burrell's interests in the BMW before Burrell filed her Chapter 13 petition on August 17, 2010. Auto-Pak fails, however, to support this argument with a citation to any reported decision or any section of the Texas Business and Commerce Code that recognizes a bill of sale by itself as sufficient to establish the date on which a sale of consumer goods is completed.

Moreover, Auto-Pak did not argue to the Bankruptcy Court as it does here, that a bill of sale by itself is sufficient to establish the date on which a sale is completed. Instead, Auto-Pak argued to the Bankruptcy Court that it relinquished possession of the BMW to Americars on August 16, 2010, and that pursuant to § 2.401(b) of the Texas Business and Commerce Code, title to consumer goods, including motor vehicles, passes to the buyer at the time and place the seller completes performance regarding the physical delivery of

-23-

the goods even though the title may be provided to the buyer at a later date.

In its motion for summary judgment Auto-Pak argued that it could not have violated the automatic stay

> because of the timing of the Plaintiff's bankruptcy filing.  None of these provisions applied to Defendant **because [it] no longer had possession or any interest in the vehicle on the date that Plaintiff filed her bankruptcy petition.**  The vehicle was repossessed on July 2, 2010 and sold on August 16, 2010.[27]

In its post-trial brief, Auto-Pak similarly argued that the following facts established that a sale took place on August 16, 2010:

> Defendant repossessed the vehicle after a payment default.  Defendant, the original dealer, sold the repossessed vehicle to a third party dealer for cash and provided a bill of sale for the sale of the repossessed vehicle.  **Third party dealer took possession of the vehicle on the same day that it paid cash for the sale and received a bill of sale.**[28]

At trial, Auto-Pak's owner, Ali Gardezi, distinguished the date on which the sale occurred from the date on which the certificate of title was provided to Americars by testifying that "the date of the sale is the actual date of the sale, **the time they**

---

[27]Defendant Auto-Pak-USA Inc. d/b/a Car Nations Motion for Summary Judgment Against the Complaint of Lorena Burrell, included in BROA, Docket Entry No. 2-25, p. 3 (emphasis added).  <u>See also</u> Docket Entry No. 22 in Adversary No. 10-03386.

[28]Post-Trial Brief of Defendant Auto-Pak-USA Inc. d/b/a Car Nations ("Defendant's Post-Trial Brief"), included in BROA, Docket Entry No. 2-52, p. 2 (emphasis added).  <u>See also</u> Docket Entry No. 46 in Adversary No. 10-03386.

**[i.e., the buyer] take[s] the delivery of the vehicle,"**[29] even
though the certificate of title was not delivered until a later
date. Auto-Pak fails to cite any reported decision or any section
of the Texas Business and Commerce Code other than § 2.401 in
support of its contention that a bill of sale by itself is
sufficient to complete a sale or transfer title of an automobile.
But § 2.401 provides no support for Auto-Pak's argument.
Section 2.401 states that

> [u]nless otherwise explicitly agreed title passes to the
> buyer at the time and place at which the seller completes
> his performance with reference to the physical delivery
> of the goods, despite any reservation of a security
> interest and even though a document of title is to be
> delivered at a different time or place . . .

The court therefore concludes that the Bankruptcy Court did not err
in concluding that the bill of sale alone, i.e., unaccompanied by
a physical transfer of the BMW from Auto-Pak to Americars, was
insufficient to transfer title, and/or to extinguish Burrell's
rights to the BMW.

> (c)  The Bankruptcy Court did not err in concluding that
> even if some sort of purported sale occurred on
> August 16, 2010, Burrell still had legal and
> beneficial title to the vehicle when she filed for
> bankruptcy on August 17, 2010.

Citing In re Ratliff, 260 B.R. 526 (Bankr. M.D. Fla. 2000),
Auto-Pak argues that

> Burrell presented no evidence that controverted Auto-
> Pak's showing that the BMW was legally repossessed and
> the collateral disposed before she filed her petition

---

[29]Trial Transcript, Docket Entry No. 2-63, pp. 131:24-132:1.

with the bankruptcy court.  Thus, as in **_Ratliff_**, the
evidence in this instant case shows that Auto-Pak,
through its president-owner, repossessed the BMW before
Burrell filed her petition.  Neither Auto Pak nor Ali
Gardezi violated the automatic stay by doing so and thus
had no duty to refrain from or prevent future disposition
at this juncture.  Therefore, Auto-Pak would not have a
duty to refrain from cashing in on the seized collateral
unless Burrell filed a petition before disposition.
Without this duty, the disposition of the BMW was not
actionable under **§ 362(k)**.[30]

A secured creditor's rights are limited to enforcement of its
security interest through disposal of the collateral either by
selling it or by accepting it in full satisfaction of the debtor's
obligation.  Tex. Bus. & Comm. Code § 9.610 and § 9.620.  A lien-
holder who has effected a non-judicial repossession of goods
pursuant to Texas Business & Commerce Code § 9.609, and who does
not accept the collateral in full satisfaction of the debtor's
obligation, may dispose of the collateral by public or private
sale.  Tex. Bus. & Comm. Code § 9.610(c)(1)-(2).  Any sale of
repossessed collateral must be commercially reasonable.  Tex.
Bus. & Comm. Code § 9.610(b).  Before disposing of the collateral
by public or private sale, a lienholder must give the debtor notice
of the intended disposition.  Tex. Bus. & Comm. Code § 9.611 and
§ 9.614.  A third party who buys the collateral from the secured
creditor acquires "all of the debtor's rights in the collateral,"
free of "the security interest under which the disposition is
made," and free of "any subordinate security interest or other
subordinate lien."  Tex. Bus. & Comm. Code § 9.617(a)(1)-(3).

---

[30]Appellant's Opening Brief, Docket Entry No. 7, p. 17.

A debtor's rights in the collateral only transfer to a third-party purchaser when a sale of the collateral is completed. Section 2.401 of the Texas Business & Commerce Code provides that "unless otherwise explicitly agreed," a sale is completed "at the time and place at which the seller completes his performance with reference to the physical delivery of the goods."   See also Vibbert, 224 S.W.3d at 322 ("Under the UCC, title to motor vehicle passes to the buyer upon delivery or possession even though a certificate of title will be delivered later and the names on the certificate of title are not changed."); NXCESS Motor Cars, Inc. v. JPMorgan Chase Bank, N.A., 317 S.W.3d 462, 466 (Tex. App. — Houston [1st Dist.] 2010, review denied) ("The Texas Business and Commerce Code . . . provides that title to goods, including motor vehicles, passes to the buyer at the time and place the seller completes performance regarding the physical delivery of the goods, and title passes despite the reservation of a security interest and despite the delivery of a title document at a later time.").

Auto-Pak cites Ratliff, 260 B.R. at 526, as authority for its contention that "the vehicle was completely disposed of when it was assigned to another dealership/auction without recourse or reserve;"[31] but Auto-Pak's reliance on Ratliff is misplaced because the assignment at issue there was not effected by a bill-of-sale but, instead, by the lienholder's, i.e., Paxon's, physical delivery of the vehicle to an auctioneer "without recourse and without

---

[31]Id. at 16.

reservation" hours before the debtors filed their second petition in bankruptcy.  Id. at 528.  Rejecting the debtor's claim that Paxon disposed of the vehicle in violation of the automatic stay, the court explained that

> [t]he only relevant issue before the Court is whether **Paxon** exercised control over the vehicle at any moment post-petition.  The Court finds that Paxon disposed of the vehicle completely upon assigning the vehicle over to the auctioneer without recourse and without reservation. At that point, Paxon no longer exercised dominion over the vehicle, as it could not retrieve the vehicle from the auctioneer.  Debtors had the burden of showing that Paxon performed some act of control over the vehicle post-petition.  Debtors failed to come forward with any evidence on this point.

Id. at 531.  Because the facts developed at trial do not support Auto-Pak's contention that the "[t]hird party dealer took possession of the vehicle on the same day that it paid cash for the sale and received a bill of sale,"[32] the Bankruptcy Court did not err by concluding that even if some sort of purported sale occurred on August 16, 2010, Burrell still had legal and beneficial title to the BMW upon filing for bankruptcy on August 17, 2010.

Auto-Pak's owner, Ali Gardezi, testified that he usually delivers vehicles to buyers on the day of purchase, but did not testify that the BMW was physically delivered to Americars on August 16, 2010:

Q.          Okay.  Do you recall when AmeriCars took delivery of the car after they purchased it?

---

[32]Defendant's Post-Trial Brief, included in BROA, Docket Entry No. 2-52, p. 2.  See also Docket Entry No. 46 in Adversary No. 10-03386.

> A.          Mostly deliveries are [d]one that same day
>             when they pay cash.   The titles are
>             delivered later on.  So it was right around
>             the 16th--
>
> Mr. Baker:  Objection, Your Honor, that has already been
>             admitted as far as possession of the car on
>             the 16th or 17th.
>
> The Court:  Sustained.[33]

The Bankruptcy Court sustained the objection because contrary to

Gardezi's testimony that Auto-Pak delivered the BMW to Americars

"around the 16th" of August 2010, ¶ 14 of the Answer that Auto-Pak

filed to Burrell's Adversary Complaint on December 30, 2010,

admitted Burrell's allegation that "Defendant is still in

possession of the vehicle."[34]

Sammy Khan, owner of Americars, testified that although he

purchased the BMW on August 16, 2010, the BMW was not physically

delivered to Americars until weeks later:

> Q.   Mr. Khan, you purchased the car on August 16.  Is
>      that correct?
>
> A.   Correct.

---

[33]Trial Transcript, included in BROA, Docket Entry No. 2-63,
p. 134:12-20.

[34]See Plaintiff's Complaint, included in BROA, Docket Entry
No. 2-4, p. 2 ¶ 14 (alleging that "Defendant is still in possession
of the Vehicle."); and Defendant's Original Answer, included in
BROA, Docket Entry No. 2-24, p. 1 ¶ 2.  See also Docket Entry
Nos. 1 and 21 in Adversary No. 10-03386; and Trial Transcript,
included in BROA, Docket Entry No. 2-61, p. 40:19 (where Auto-Pak's
owner, Ali Gardezi, acknowledges that ¶ 14 of Auto-Pak's Answer
admits Burrell's allegation that the vehicle remained in Auto-Pak's
possession, but asserts that admission is not correct).

Q.    Okay.  And did you take possession or delivery of
      the car on that date --

A.    No, I didn't.

Q.    -- do you recall?

A.    No.

Q.    Okay.  Do you recall when you took delivery of the
      car?

A.    I think it was way after, about maybe two weeks,
      three weeks.[35]

Cassandra Green, a paralegal employed by Burrell's attorney,
testified that on August 19, 2010, she called Auto-Pak and spoke
with an Auto-Pak employee named Kendall who told her that Auto-Pak
still had the BMW and that she would have to talk with the manager,
i.e., Gardezi, about the outstanding request for turnover.[36]

Based on the testimony of Gardezi, Khan, and Green that Auto-
Pak retained possession of the BMW after August 17, 2010, the day
on which Burrell filed her Chapter 13 petition, the Bankruptcy
Court did not err in concluding that even if some sort of purported
sale occurred on August 16, 2010, Burrell still had legal and
beneficial title to the BMW upon filing for bankruptcy on
August 17, 2010, and that Auto-Pak violated the automatic stay by
failing to turnover the BMW to Burrell and by delivering the BMW to
Americars.

_____

      [35]Trial Transcript, included in BROA, Docket Entry No. 2-62,
Docket Entry No. 2, pp. 58:23-59:8.

      [36]Id. at 83:21-84:6.

                            -30-

B.    **The Bankruptcy Court Did Not Err in Awarding Punitive Damages
      to Burrell**

The Bankruptcy Court awarded Burrell $7,181.60 in punitive

damages.[37]   The Bankruptcy Court explained its decision to award

Burrell punitive damages as follows:

> The Court does not believe any sale took place on
> August 16, 2010.  The Court formed this belief after
> reviewing all of the pleadings and listening to the
> witnesses' testimony at trial.  The Court believes that
> once Auto-Pak realized Burrell retained rights in the
> vehicle even after the repossession, it chose to back-
> date the bill of sale instead of returning the vehicle,
> in the erroneous belief that this would extinguish
> Burrell's interest.  This decision makes Auto-Pak's
> automatic stay violation much more egregious.  Under
> these exacerbating circumstances, the large punitive
> damages award is both reasonable and justified in order
> to deter Auto-Pak and other creditors from acting
> similarly in the future.[38]

Auto-Pak argues that

> there is not a scintilla of evidence put forth by Burrell
> that demonstrates from the record as a whole that the
> supposition proposed by the court below has any credence.
> The finding entered in the court below to the contrary is
> a clear abuse of discretion.  Here, there is left with
> but one conclusion that a mistake has been committed.[39]

11 U.S.C. § 362(k)(1) provides that "an individual injured by

any willful violation of a stay provided by this section shall

recover actual damages, including costs and attorneys' fees, and,

in appropriate circumstances, may recover punitive damages."  The

---

[37]Memorandum Opinion, included in BROA, Docket Entry No. 2-79,
p. 7.  See also Docket Entry No. 72 in Adversary Proceeding No. 10-
03386.

[38]Id.

[39]Appellant's Opening Brief, Docket Entry No. 7, p. 19.

Fifth Circuit has held that "appropriate circumstances" for an award of punitive damages "require[s] egregious, intentional misconduct on the violator's part." In re Repine, 536 F.3d 512, 521 (5th Cir. 2008), cert. denied, 129 S.Ct. 1008 (2009) (adopting standard recognized by the Eighth Circuit in In re Knaus, 889 F.2d 773, 776 (8th Cir. 1989)). See also In re Lile, 161 B.R. 788, 792 (S.D. Tex. 1993) (endorsing "egregious misconduct" standard).

The facts developed at trial establish that despite knowledge of Burrell's bankruptcy filing and repeated requests to turnover the BMW made by Burrell and her attorneys in the days following the filing of Burrell's Chapter 13 petition, Auto-Pak not only retained dominion and control over the BMW, but also failed to turnover the BMW, cashed in on the BMW by delivering it to Americars weeks after Burrell's bankruptcy filing, and admittedly back-dated the certificate of title to August 16, 2010, in an effort to substantiate its contention that it sold the BMW to Americars the day before Burrell filed her bankruptcy petition.[40]   Based on the

---

[40]Americars' owner, Sammy Khan, testified that he took delivery of the BMW two or three weeks after August 16, 2010, the date on which Auto-Pak contends the sale took place; and in its Answer to Burrell's Adversary Complaint, Auto-Pak admitted Burrell's allegation in ¶ 14 of Plaintiff's Complaint that "Defendant is still in possession of the Vehicle." See Defendant's Original Answer, included in BROA, Docket Entry No. 2-24, p. 1 ¶ 2. See also Docket Entry No. 21 in Adversary Proceeding No. 10-03386. Moreover, Auto-Pak's owner, Ali Gardezi, testified that although the certificate of title was not provided to Americars on August 16, 2010, when the title was later provided to Americars, it was back-dated to reflect the date of sale as August 16, 2010:

(continued...)

facts at trial, the Bankruptcy Court did not err by concluding either that no sale took place on August 16, 2010, because neither

---

[40] (...continued)

Q.    Explain to the Court why the title was not readily given to Mr. Khan on the same day.

A.    Well, the title is -- sometimes we keep it in a safe deposit box or sometimes its somewhere else. So it depends where the title is. At the time of the sale, title is not surrendered.

      Title is surrendered later on whenever we go to the bank, pick up the titles and give it to -- sometimes it's a retail buyer, we have them sign it and transfer, sometimes it's a wholesaler, then we mail it out, or we deliver it by hand, depends how it is done, or how far they are.

Q.    How long between the sale and turning the title over, how much time had passed before you gave the title to Mr. Khan?

A.    It was done before the 27th, because on the 27th we had his signature.  So it was some time between 18th -- I mean 16th and 27th of August.

Q.    Isn't it a fact when you sell this vehicle to another dealer, the sale date is noted on the back of the title?

A.    You have to put the actual sale.  It doesn't matter what date it was delivered because the liability goes with it.  If Mr. Khan has taken the delivery from me on the 16th, and he goes and runs some traffic tickets or something else, and then I will have no recourse of prosecuting Mr. Khan for those tickets because if I put the wrong sale date on the back of the title.  So that is kind of our proof that the date of the sale is the actual date of the sale, the time they take the delivery of the vehicle.

Trial Transcript, included in BROA, Docket Entry No. 2-63, pp. 130:25-132:13.

the BMW nor the certificate of title was delivered to Americars on
that date, or that "once Auto-Pak realized Burrell retained rights
in the vehicle even after the repossession, it chose to back-date
the bill of sale instead of returning the vehicle, in the erroneous
belief that this would extinguish Burrell's interest."[41]   Because
the conduct of Auto-Pak was egregious, the Bankruptcy Court did not
abuse its discretion by awarding punitive damages in this case.
See Lile, 161 B.R. at 792 (awarding punitive damages for egregious
misconduct where the creditor seized certain property of the estate
notwithstanding its knowledge of the bankruptcy).

**C.    The Bankruptcy Court Did Not Err in Awarding Attorney's Fees
       to Burrell**

11 U.S.C. § 362(k)(1), states that "an individual injured by
any willful violation of a stay provided by this section shall
recover actual damages, including costs and attorneys' fees. . ."
Thus, "fees and costs experienced by the injured party in resisting
the violator's appeal are part of the damages resulting directly
from the stay violation."   Mitchell, 316 B.R. at 904.   "The
bankruptcy court's award of attorney's fees is reviewed for abuse
of discretion, as are determinations regarding rates and hours."
Id. at 902.   See also In re Coxson, 43 F.3d 189, 193 (5th Cir.
1995) ("A grant of attorney's fees is reviewed for an abuse of
discretion.").

---

[41]Memorandum Opinion, included in BROA, Docket Entry No. 2-79,
p. 7.   See also Docket Entry No. 72 in Adversary Proceeding No. 10-
03386.

-34-

The Fifth Circuit uses the lodestar method for calculating reasonable attorney fees. See Longden v. Sunderman, 979 F.2d 1095, 1099 (5th Cir. 1992). The first step of this analysis is to determine the reasonable hourly rate for the attorneys and non-legal personnel who worked on the case. Id. See also Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir.), cert. denied, 116 S.Ct. 173 (1995). The reasonable hourly rate is based on "the prevailing market rates in the relevant community." Blum v. Stenson, 104 S.Ct. 1541, 1547 (1984). The court must then determine the number of hours "reasonably expended" by the attorneys. Kellstrom, 50 F.3d at 324 (citing Hensley v. Eckerhart, 103 S.Ct. 1933, 1939 (1983)). The court then multiplies the hours "reasonably expended" by the reasonable hourly rate to determine the lodestar figure. Kellstrom, 50 F.3d at 324. See also Strong v. BellSouth Telecommunications, Inc., 137 F.3d 844, 850 (5th Cir. 1998). The burden of demonstrating the reasonableness of the number of hours expended and the hourly rates charged falls on the fee applicant. Hensley, 103 S.Ct. at 1941. The lodestar amount is the starting point for the fee calculation. The court may increase or decrease the lodestar amount based on the factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).[42] Kellstrom, 50 F.3d at 329. See also

---

[42]The twelve Johnson factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the (continued...)

-35-

In re Pilgrim's Pride Corp., ___ F.3d ___, 2012 WL 3239955, *4 (5th
Cir. August 10, 2012) ("bankruptcy courts have 'considerable
discretion' when determining whether an upward or downward
adjustment of the lodestar is warranted").

Auto-Pak's failure to return the vehicle required Burrell to
file the adversary action.  Disproportion alone does not make an
award of attorney fees excessive.  See Northwinds Abatement, Inc.
v. Employers Insurance of Wausau, 258 F.3d 345, 354-55 (5th Cir.
2001) (award of attorney fees that was three times the size of
trebled damages award not unreasonable solely on that ground).
Burrell prevailed on all her claims.  The Bankruptcy Court held a
hearing on the issue of award of attorney's fees and at the
conclusion of the hearing found an award of attorney's fees to be
appropriate and the amount awarded to be reasonable under Johnson,
488 F.2d at 714.[43]

Auto-Pak has not argued that the Bankruptcy Court's findings
of fact underlying its award of attorney's fees under section
362(k) were clearly erroneous.  Auto-Pak argues, instead, that

---

[42](...continued)
preclusion of other employment due to this case, (5) the customary
fee, (6) whether fee is fixed or contingent, (7) time limitations,
(8) the amount involved and results obtained, (9) the experience,
reputation, and ability of counsel, (10) the undesirability of the
case, (11) the nature and length of the professional relationship
with the client, and (12) awards in similar cases.  See Johnson,
488 F.2d at 717-19.

[43]Memorandum Opinion, included in BROA, Docket Entry No. 2-79,
pp. 7-8.  See also Docket Entry No. 72 in Adversary Proceeding
No. 10-03386.

the attorney fees portion of the damages related to
enforcing the automatic stay entered by the bankruptcy
court should be vacated as only those attorney's fees
related to enforcing the automatic stay and remedying the
stay violation should be recoverable and not the fees
incurred in prosecuting the bankruptcy adversary
proceeding in which Burrell pursued her claim for those
damages.[44]

In support of this argument, Auto-Pak cites <u>Sternberg v. Johnston</u>,

582 F.3d 1114 (9th Cir. 2009).  Auto-Pak explains that in <u>Sternberg</u>

[t]he Court affirmed a violation of the automatic stay
[11 U.S.C. 362], yet held that legal fees could only be
recovered to the extent that they were incurred in
connection with enforcing the automatic stay and
remedying the violation, and not in the litigation of
damages.[45]

Auto-Pak's reliance on <u>Sternberg</u> is misplaced because in a

subsequent opinion that amended and superseded the opinion on which

Auto-Pak relies, <u>Sternberg v. Johnston</u>, 595 F.3d 937, 948 (9th

Cir.), <u>cert. denied</u>, 131 S.Ct. 102, 180 (2010), the Ninth Circuit

acknowledged that its decision on this issue created a split

between the Ninth and the Fifth Circuits.   The Ninth Circuit

explained that

[w]e recognize that the Fifth Circuit appears to have
held to the contrary: "The lower courts in our Circuit
have concluded that it is proper to award attorney's fees
that were incurred prosecuting a section 362(k) claim
[,]" and "[w]e adopt the same reading of section 362(k)
and therefore agree."   <u>Young v. Repine (In re Repine)</u>,
536 F.3d 512, 522 (5th Cir. 2008).   We do not create a
circuit split lightly.   But the above-quoted language is
all the court said on the issue.   Without more, we are
hard-pressed to find this decision persuasive.

---

[44]Appellant's Opening Brief, Docket Entry No. 7, p. 20.

[45]<u>Id.</u> at 21.

Sternberg, 595 F.3d at 948.   Because this court is bound by the Fifth Circuit's holding in Repine, 536 F.3d at 522, "that it is proper to award attorney's fees that were incurred prosecuting a section 362(k) claim," and because Auto-Pak has not argued that the Bankruptcy Court's award of attorney's fees are otherwise unreasonable, the court concludes that the Bankruptcy Court's award of attorney's fees to Burrell is not an abuse of discretion.

## IV.  Conclusions and Order

For the reasons stated above, the Bankruptcy Court's Amended Judgment (Exhibit A to Assignment to a District Judge, Docket Entry No. 1-2, p. 5) is **AFFIRMED**.   Burrell shall file documentation of the fees incurred in defending this appeal within ten (10) days from the entry of this Memorandum Opinion and Order.   Auto-Pak may respond within twenty (20) days from the entry of this Memorandum Opinion and Order.

**SIGNED** at Houston, Texas, on this 27th day of August, 2012.

SIM LAKE
UNITED STATES DISTRICT JUDGE